UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., | CASE NO. CV F 11-2030 LJO SAB |
| Plaintiff, | **SUMMARY JUDGMENT DECISION JUDGMENT THEREON** (Doc. 36.) |
| vs. | |
| RICHARD JESUS GARCIA, | |
| Defendant. | |

## INTRODUCTION

Pursuant to F.R.Civ.P. 56, plaintiff Joe Hand Promotions, Inc. ("Joe Hand") seeks to impose a monetary judgment against defendant Richard Jesus Garcia ("Mr. Garcia") for Mr. Garcia's unlawful interception of a closed-circuit boxing program. This Court considered Joe Hand's summary judgment motion on the record[1] and VACATES the November 13, 2013 hearing, pursuant to Local Rule 230(c), (g). For the reasons discussed below, this Court GRANTS Joe Hand a $9,400 judgment.

---

[1] In the absence of Mr. Garcia's timely opposition, this Court carefully reviewed and considered the entire record to determine whether Joe Hand's summary judgment motion is well supported. Omission of reference to evidence, an argument, document, objection or paper is not to be construed to the effect that this Court did not consider the evidence, argument, document, objection or paper. This Court thoroughly reviewed, considered and applied the evidence it deemed admissible, material and appropriate for summary judgment.

1

## BACKGROUND

### Program Interception

Joe Hand is a closed-circuit distributor of sports and entertainment programming and obtained for the United States the exclusive commercial exhibition licensing rights to "*Ultimate Fighting Championship 124: Georges St. Pierre v. Josh Koscheck*" ("program"), which was broadcast on December 11, 2010. Joe Hand marketed sub-licensing (commercial exhibition) rights to commercial establishment customers in the United States to permit them to show the program. To broadcast the program, Joe Hand required commercial establishments to pay a sublicense fee of $900 for seating capacity up to 50 persons. Joe Hand did not sublicense the program to Mr. Garcia.

Joe Hand alleges that Mr. Garcia unlawfully intercepted and exhibited the program at his Guadalajara Mexican restaurant ("restaurant") in Clovis, California without payment of the $900 commercial sub-licensing fee.

Joe Hand relies on the affidavit of private investigator Lawrence K. Brookter ("Mr. Brookter"), who claims that beginning at 8 p.m. during the program, he observed:

1. Twenty-five people in the restaurant eating and watching the program;
2. A 32-inch television over the bar showing the program;
3. No assessed cover charge;
4. A bartender and assistant operating the restaurant's bar;
5. The restaurant "is in an upscale neighborhood"; and
6. Eight people sitting at the bar and watching the program.

Mr. Brookter's exit head count revealed 25-30 people eating with "some watching the fight."

### Joe Hand's Claims

Joe Hand proceeds on its complaint to allege claims for violation of the Communications Act of 1934, 47 U.S.C. §§ 605, et seq., and conversion. By summary judgment, Joe Hand seeks statutory and enhanced damages under 47 U.S.C. § 605 ("section

605") and $900 damages for conversion of the program.

## DISCUSSION

### Summary Judgment Standards

Joe Hand contends that there is no genuine issue of material fact as to Mr. Garcia's unlawful interception and broadcast of the program.

F.R.Civ.P. 56(a) permits a party to seek summary judgment "identifying each claim or defense – or the part of each claim or defense – on which summary judgment is sought." "A district court may dispose of a particular claim or defense by summary judgment when one of the parties is entitled to judgment as a matter of law on that claim or defense." *Beal Bank, SSB v. Pittorino*, 177 F.3d 65, 68 (1st Cir. 1999).

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." F.R.Civ.P. 56(a); *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The purpose of summary judgment is to "pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec.*, 475 U.S. at 586, n. 11, 106 S.Ct. 1348; *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact," not weigh the evidence or determine the truth of contested matters. F.R.Civ.P. 56(a), (c); *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997); see *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467, 82 S.Ct. 486 (1962); *Loehr v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505 (1986)

"[T]o carry its ultimate burden of persuasion on the motion, the moving party must

3

persuade the court that there is no genuine issue of material fact." *Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see High Tech Gays v. Defense Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir. 1990). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

"If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." *Nissan Fire*, 210 F.3d at 1103; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986) (F.R.Civ.P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make the showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.")

F.R.Civ.P. 56(e)(3) provides that when a party "fails to properly address another party's assertion of fact," a court may "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion will be granted." *Nilsson, Robbins, et al. v. Louisiana Hydrolec*, 854 F.2d 1538, 1545 (9th Cir. 1988). When a summary judgment motion is unopposed, a court must "determine whether summary judgment is appropriate – that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *Anchorage Associates v. V.I. Bd. of Tax Review*, 922 F.2d 168, 175 (3rd Cir. 1990). A court "cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but, rather must consider the merits of the motion." *United States v. One Piece of Real Property, etc.*, 363 F.3d 1099, 1101 (11th Cir. 2004). A court "need not sua sponte review all of the evidentiary materials on file at the time the motion is granted, but must ensure

that the motion itself is supported by evidentiary materials." *One Piece of Real Property*, 363 F.3d at 1101.

As discussed below, Joe Hand has demonstrated that it is entitled to summary judgment against Mr. Garcia on Joe Hand's section 605 and conversion claims.

### **Signal Piracy**

#### *Liability*

Section 605 addresses unauthorized publication or use of wire or radio communications and provides in pertinent part:

> (a) . . . no person receiving, assisting in receiving . . . any interstate . . . communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney . . . No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.
>
> . . .
>
> (e)(3)(A) Any person aggrieved by an violation of subsection (a) of this section . . . may bring a civil action in a United States district court or in any other court of competent jurisdiction.

Section 605(d)(6) defines "any person aggrieved" to include "any person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming."

In addition, the Cable Communications Policy Act of 1992, in particular 47 U.S.C. § 553 ("section 553"), addresses unauthorized reception of cable service and provides in

pertinent part:

> (a)(1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
>
> . . .
>
> (c)(1) Any person aggrieved by any violation of subsection (a)(1) of this section may bring a civil action in a United States district court or in any other court of competent jurisdiction.

"The Cable Communications Act imposes strict liability under 47 U.S.C. §§ 553 and 605." *Don King Productions/Kingvision v. Lovato,* 1996 WL 682006, at *3 (N.D. Cal. 1996). "Both § 553 and § 605 are strict liability statutes." *J & J Sports Productions, Inc. v. Delgado*, 2012 WL 371630, at *3 (E.D. Cal. 2012).

Joe Hand identifies itself as a "person aggrieved" under sections 605 and 553 given its "exclusive nationwide distribution rights to the Program" for commercial establishments, like the restaurant.

### *Deemed Admissions*

To establish Mr. Garcia's liability under section 605, Joe Hand relies on Mr. Garcia's failure to respond to Joe Hand's F.R.Civ.P. 36 requests for admission to result in Mr. Garcia's deemed admissions. F.R.Civ.P. 36(a)(3) provides: "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."

"Failure to respond to requests for admissions results in automatic admission of the matters requested. . . . No motion to establish the admissions is needed because Federal Rule of Civil Procedure 36(a) is self executing." *Federal Trade Comm. v. Medicor LLC*, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002). "The failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of the case." *In re Carney*, 258 F.3d 415, 421 (5th Cir. 2001).

"Unanswered requests for admissions may be relied on as the basis for granting

6

summary judgment." *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007). Facts deemed admitted because of failure to respond to requests for admission may support summary judgment. *Nick-o-Val Music Co., Inc. v. P.O.S. Radio, Inc.*, 656 F.Supp. 826, 828 (M.D. Fla. 1987).

Joe Hand notes that Mr. Garcia's failure to respond to Joe Hand's requests for admission results in the following deemed admissions:

1. Mr. Garcia was an owner, manager and officer of the restaurant when the program was broadcast;

2. Mr. Garcia was present inside the restaurant when the program broadcast and bartenders and managers acted on his behalf;

3. Mr. Garcia advertised that the program would be telecast at the restaurant and knew that the restaurant's patrons watched the program;

4. Mr. Garcia did not order the program from Joe Hand;

5. Mr. Garcia did not pay a licensing fee to Joe Hand although he was aware a licensing fee was required to be paid to Joe Hand;

6. Mr. Garcia willfully intercepted and broadcast the program at the restaurant;

7. The program was received because a residential cable or satellite serve was diverted to the restaurant, an illegal decoder was used in the restaurant, a satellite access card without proper authorization or payment was used; and/or Mr. Garcia ordered the program from and paid a programming provider the residential license fee for the program; and

8. Mr. Garcia obtained the program illegally and intentionally broadcast the program by deception for financial gain.

Joe Hand argues that it is entitled to summary judgment on section 605 liability in that Mr. Garcia effectively admits that he illegally intercepted and broadcast the program at the restaurant willfully and for financial gain. Joe Hand notes that Mr. Garcia could legally broadcast the program only by contracting with Joe Hand for a sub-license given Joe Hand's exclusive commercial distribution rights. Joe Hand contends that it is entitled to impose section 605 strict liability on Mr. Garcia in that the program was shown in the restaurant

without Joe Hand's authorization. Joe Hand concludes there are no factual issue whether Mr. Garcia is subject to section 605 liability.

"There are no mens rea or scienter elements for a non-willful violation of 47 U.S.C. § 605(a), or its counterpart governing unauthorized interception of cable service under 47 U.S.C. § 553(a)." *Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, at *4 (N.D. Oh. 2009). "These are strict liability offenses with no good faith defense." *Easterling*, 2009 WL 1767579, at *4. "As a strict liability statute, to prove a violation, [plaintiff] need only show that the Event was shown in Defendant's establishment without its authorization." *Joe Hand Promotions, Inc. v. Moctezuma Club, Inc.,* 2012 WL 2358254, 2 (N.D. Tex. 2012).

Joe Hand raises valid points and establishes that it is an aggrieved person entitled to section 605 relief. Based on the record, Joe Hand demonstrates there is no factual issue whether Mr. Garcia is subject to section 605 liability. Mr. Garcia's deemed admissions and failure to oppose summary judgment demonstrate his wrongful interception of the program and liability under section 605.

*Damages*

Joe Hand seeks to impose on Mr. Garcia statutory damages under section 605(e)(3)(C) given difficulty to prove actual damages sustained by Joe Hand.

Section 605(e)(3)(C)(i)(II) authorizes statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. §605(e)(3)(C)(ii) authorizes "enhanced" damages up to $100,000 if the court finds the violation was willfully committed for commercial advantage or private financial gain. Alternatively, if "the court finds that the violator was not aware and had no reason to believe that his acts constituted violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $250." 47 U.S.C. §605(e)(C)(iii).

Statutory Damages

"In general, statutory damages are appropriate where, as here, the measure of actual damages is difficult to prove." *Lauratex Textile Corp. v. Allton Knitting Mills Inc.*, 519 F.Supp. 730, 732 (D.C. N.Y. 1981).

In his affidavit, Joe Hand President Joe Hand, Jr. ("Mr. Hand") states that "signal piracy" has caused Joe Hand's "loss of several millions of dollars of sales revenue" and "has a detrimental effect upon lawful residential and commercial customers of cable and satellite broadcasting whose costs of service are increased significantly by these illegal activities." Mr. Hand further points to signal pirates' financial benefit and millions of dollars lost to Joe Hand and its customers "resulting, in significant part, from the perceived lack of consequences" to signal pirates.

Joe Hand notes that section 605 awards serve the primary goal of "specific and general" deterrence. The "amount of damages awarded should be in an amount that is adequate to deter these Defendants and others from committing similar acts in the future." *Joe Hand Promotions, Inc. v. Gamino*, 2011 WL 66144, at *4 (E.D. Cal. 2011). A "firm judicial hand is required to stop this predatory behavior, which is outright thievery, and to compensate the aggrieved appropriately." *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F.Supp.2d 669, 677 (D. S.C. 2011) (internal quotation omitted). The "difficulty in detecting unlawful interception, the widespread problem of piracy, the projected loss to plaintiff, and the need for an award sufficient to deter future piracy by defendants and others, weigh in favor of granting maximum statutory damages." *J & J Sports Productions, Inc. v. Cubides*, 2008 WL 2756401, *2 (S.D. Tex. 2008).

Joe Hand points to the absence of a Ninth Circuit formula to calculate section 605 damages to invoke this Court's "considerable discretion." A fellow district court notes that section 605 damages are based on "the number of patrons in the establishment at the time of the violation" or "a flat sum for damages." *Entertainment by J & J, Inc. v. Al-Waha Enterprises, Inc.*, 219 F.Supp.2d 769, 776 (S.D. Tex. 2002). Joe Hand urges a "flat sum" damages calculation given the limited patrons in the restaurant during the program and that "a damage award based on this limited number may do little to prevent such unlawful conduct in the future." *See Kingvision Pay-Per-View, Ltd. v. Gutierrez,* 544 F.Supp.2d 1179, 1184 (D. Colo. 2008). "Merely requiring [defendant] to pay the price it would have been charged to obtain legal authorization to display the Event does nothing to accomplish this objective of the

9

statute. There would be no incentive to cease the violation if the penalty were merely the amount that should have been paid." *Entertainment by J & J, Inc.*, 219 F.Supp.2d at 776 (internal quotation omitted). "[M]inimal damage awards may result in a perceived lack of consequences for signal piracy." *J & J Sports Productions, Inc. v. Herrera*, 2011 WL 643413, at *4 (E.D. Cal. 2011).

Joe Hand proposes no set amount of statutory damages under section 605(e)(3)(C)(i)(II). Joe Hand relies on this Court's discretion to award statutory damages between $1,000 and $10,000. The record supports a flat sum of statutory damages given the 25-30 patrons at the restaurant during the program, with even fewer watching the program. Mr. Garcia's deemed admissions are that he pirated the program, and he offers nothing to mitigate his conduct. As such, statutory damages of $5,000 will fulfill section 605(e)(3)(C)(i)(II) purposes and serve to deter piracy.

### Enhanced Damages

Turning to section 605(e)(C)(ii) enhanced damages, Joe Hand points to Mr. Garcia's deemed admissions that he acted willfully for financial gain. Joe Hand contends that Mr. Garcia's "inadvertent" acquisition of the program is "extremely unlikely" given Joe Hand's efforts to avoid descrambling signals to avoid piracy. "The act of intercepting an encrypted broadcast is not done by accident, but requires an affirmative action by the defendant. Very simply, the Court finds that the defendant took willful action to unlawfully intercept and broadcast the Exhibition." *Joe Hand Promotions, Inc. v. Wing Spot Chicken & Waffles, Inc.*, 920 F.Supp.2d 659, 668 (E.D. Va. 2013) ("Because the defendant showed the Exhibition on all of its televisions at no cost, the Court concludes that the defendant acted willfully for commercial advantage and private financial gain.").

Similar to its approach to statutory damages, Joe Hand proposes no set amount of enhanced damages under section 605(e)(3)(C)(ii) and relies on this Court's discretion to award up to $100,000 enhanced damages. Mr. Garcia's deemed admissions and failure to defend Joe Hand's claims suggest that he acted willfully for commercial gain. Although his gain appears limited with only 25-30 patrons, no mitigating factors are present. As such, additional $3,500

10

enhanced damages are appropriate.

## Conversion

Joe Hand further seeks to impose on Mr. Garcia a $900 judgment for its conversion claim.

"In California, conversion has three elements: ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Associates, Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992). Broadcast signals and rights constitute property for a conversion claim. *DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D. Cal. 2005) ("Plaintiff possesses a right to distribute programming via satellite broadcast, thereby satisfying the first element of conversion"); *Don King Productions/Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D. Cal. 1995).

Joe Hand contends that its exclusive program distribution rights constituted its possession of the program which was intercepted and thus converted. Joe Hand seeks $900, which is the commercial sub-license fee charged to an establishment with the restaurant's seating capacity.

The record reflects that Mr. Garcia converted the programming to entitle Joe Hand Sports to its $900 fee for an establishment of the restaurant's capacity.

## Legal Expenses

Section 605(e)(3)(B)(iii) provides for "recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." As such, Joe Hand requests to submit papers for an award of attorney fees and costs. Joe Hand is entitled to seek attorney fees and costs against Mr. Garcia given summary judgment for Joe Hand.

## CONCLUSION, ORDER AND JUDGMENT

Joe Hand has established that it is entitled to summary judgment against Mr. Garcia on its section 605 and conversion claims. As such, this Court:

1. GRANTS Joe Hand a $9,400 judgment against Mr. Garcia;

2. ENTERS this JUDGMENT in favor of plaintiff Joe Hand Promotions, Inc. and against defendant Richard Jesus Garcia. This JUDGMENT is subject to F.R.App.P.'s 4(a)'s

1 time limitations to file an appeal of this JUDGMENT;

2      3.    ORDERS Joe Hand, no later than November 20, 2013, to file and serve appropriate papers, if it seeks attorney fees and costs, and to set the appropriate hearing before U.S. Magistrate Judge Stanley A. Boone, who will determine the matter. If Joe Hand fails to file such timely papers, it will be barred to seek legal expenses under section 605(e)(3)(B)(iii) and this Court will close this action; and

     4.    VACATES the January 8, 2014 pretrial conference and February 25, 2014 trial as unnecessary.

IT IS SO ORDERED.

Dated:   **November 4, 2013**           /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE